UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAVIER TORRES,

       Petitioner,

v.                       Case No: 2:14-cv-186-FtM-29CM

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

       Respondents.[1]

_____

## OPINION AND ORDER

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Javier Torres ("Petitioner"), a prisoner of the Florida Department of Corrections (Doc. 1, filed March 26, 2014). Petitioner attacks the conviction entered against him by the Twentieth Judicial Circuit Court in Lee County, Florida for manslaughter. Id. Respondent filed a response to the petition, arguing that it should be denied (Doc. 8). Petitioner filed a reply (Doc. 13), and the petition is ripe for review.

_____

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004) (citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

Petitioner raises four claims in his petition. Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be either dismissed or denied. Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.  Background

On June 26, 2009, the State of Florida charged Petitioner with manslaughter, in violation of Florida Statute § 782.07(1) (Ex. 1).[2] A jury found Petitioner guilty as charged (Ex. 2). On September 20, 2010, the trial court sentenced Petitioner to fifteen years in prison (Ex. 4; Ex. 5). Florida's Second District Court of Appeal upheld Petitioner's conviction and sentence (Ex. 8); Torres v. State, 73 So. 3d 770 (Fla. 2d DCA 2011).

On September 17, 2012, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (Ex. 9). Each of the three claims raised in the motion was denied (Ex. 11). Florida's

---

[2] Citations to exhibits are to those filed by Respondent on July 14, 2016 (Doc. 10). Citations to the trial transcript, located in Exhibit 2, will be cited as (T. at ___).

Second District Court of Appeal affirmed per curiam (Ex. 12);
<u>Torres v. State</u>, 138 So. 3d 450 (Fla. 2d DCA 2013).

Florida filed the instant petition on March 14, 2014 (Doc. 1).

## II.  <u>Legal Standards</u>

### A.   The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702 (2014).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11th Cir. 2008).  Notably, a state court's violation of <u>state</u> law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); <u>Wilson v. Corcoran</u>, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall,

592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the

petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013) (same).

## B.   Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id.   This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 563 U.S. 170 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls

within the wide range of reasonable professional assistance[.]" Id. at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### C. Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law.

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)).  The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. Coleman, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same

claim in federal court. Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179-80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999); Murray v. Carrier, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"  Murray v. Carrier, 477 U.S. 478, 479-80 (1986).  Actual innocence means factual innocence, not legal insufficiency.  Bousley v. United States, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995).  "To be credible, a claim of actual innocence

must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

### III. Analysis

In his brief on direct appeal, Petitioner summarized the facts surrounding his arrest and trial as follows:

> Appellant was charged by information on June 26, 2009 with one count of manslaughter. The information alleged that "between January 30, 2009 and January 31, 2009," [Petitioner] killed Cindy Lynn Warner by "blunt force trauma and/or strangulation, contrary to Florida Statute 782.07(1)." The record establishes that Appellant and Ms. Warner were living together, and had two children together. According to witness testimony at the trial, on the evening of January 30, 2009, there were several people gathered at the home of Appellant and Ms. Warner. Ms. Warner's nephew, Daniel Massey, testified that on the night of January 31, 2009, he slept on a love seat outside of the bedroom occupied by [Petitioner] and Ms. Warner. Mr. Massey testified that [Petitioner] and Ms. Warner went to bed on the night of January 30, 2009, and that he was told by another occupant of the home sometime the following morning that [Petitioner] had tried to wake up Ms. Warner and discovered that she was dead. On cross-examination, Mr. Massey answered in the negative when asked whether he "heard any commotion from the bedroom" that night while he was outside of the bedroom occupied by [Petitioner] and Ms. Warner.
>
> Witnesses also testified at the trial that Ms. Warner had consumed cocaine and Oxycontin on January 30. In addition, the medical examiner, Dr. Rebecca Hamilton, testified that the toxicology report conducted on Ms. Warner showed that she had taken anti-depressants (Citalopram and Trazadone), cocaine,

> Oxycodone, and a benzodiazepine (Estazolam).
> Dr. Hamilton also testified that the Oxycodone
> level in Ms. Warner's blood was .408
> milligrams per liter, which was a
> "significant" level, as Dr. Hamilton had
> observed cases in which doses of Oxydonon
> [sic] from .2 to 5 milligrams per liter had
> been lethal. Dr. Hamilton acknowledged on
> cross-examination that this toxicology taken
> alone, without anything else, would be
> consistent with death due to the effects of
> several drugs, and that if the autopsy had
> only shown this toxicology and nothing else,
> she would "possibly conclude" that Ms. Warner
> dies as a result of the drugs. Dr. Hamilton
> also agreed with the statement by Appellant's
> counsel that the "drugs taken alone could be
> consistent with a death due to basically a
> drug overdose" if everything else is ruled
> out.
>
> Notwithstanding the toxicology, Dr. Hamilton
> testified that she concluded the cause of Ms.
> Warner's death to be strangulation. This was
> due to Dr. Hamilton's observation of what she
> referred to as "hemorrhages on both sides of
> [Ms. Warner's] neck on the strap muscles."
> Dr. Hamilton also testified that she observed
> petechial, however, she stated that the
> petechial were "very faint."

(Ex. 6 at 2-3) (internal citations to the record omitted).

Petitioner now raises four claims in his federal habeas petition (Doc. 1).[3] He asserts that: (1) the trial court erred by failing to give a special jury instruction as to causation (Claim One); (2) trial counsel (Counsel) was ineffective for misadvising him that his criminal background would be revealed to the jury if

---

[3] Petitioner raised the issues of Claims Two through Four in a single claim of ineffective assistance of Counsel (Doc. 1). For clarity, the Court will label and address each ineffective assistance claim separately.

he chose to testify (Claim Two); (3) trial counsel was ineffective for failing to request a jury instruction on lesser included offenses (Claim Three); and (4) trial counsel made only a boilerplate motion for judgment of acquittal (Claim Four). Id. at 5-10. Each claim will be separately addressed.

### A.   Claim One

Petitioner asserts that the trial court erred by failing to give a special jury instruction on causation (Doc. 1 at 5). Specifically, he urges that such an instruction would have caused the jury to conclude that the victim had died of a drug overdose, or alternatively, that "Petitioner's actions were not a substantial factor in Ms. Warner's death." Id. Petitioner raised this claim on direct appeal where it was denied without a written opinion by Florida's Second District Court of Appeal (Ex. 8).

Respondent urges that any constitutional aspect of Claim One is unexhausted because it was raised only as an issue of state law in state court (Doc. 8 at 4-5). Alternatively, Respondent notes that "Petitioner's state-law based claim is not cognizable [on federal habeas review] and Petitioner is entitled to no relief." Id. at 5-6. Indeed, the sole argument in Petitioner's brief on direct appeal was whether the trial court erred under Eversley v. State, 748 So. 2d 963 (Fla. 1999) when it failed to give a special jury instruction on causation (Ex. 6).

For a habeas petitioner to fairly present a federal claim to state courts:

> It is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made. Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court "such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.

McNair v. Campbell, 416 F.3d 1291, 1302-03 (11th Cir. 2005) (internal citations omitted).  As part of such a showing, the claim presented to the state courts "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." Reedman v. Thomas, 305 F. App'x 544, 545-46 (11th Cir. 2008) (internal citation omitted).

Petitioner's brief on direct appeal did not suggest that he raised a claim of constitutional dimension; nor does he do so in the instant petition.  Because Petitioner did not show how this particular claim implicated due process concerns in his brief on appeal, Petitioner's challenge to the state court's denial of Claim One is unexhausted. Petitioner does not satisfy (or even allege)

the cause and prejudice, or fundamental miscarriage of justice exceptions to overcome the procedural default of this claim. Florida's procedural rules and time limitations preclude a second appeal. Fla. R. App. P. 9.140(b)(3) (defendant wishing to appeal a final judgment must do so within "30 days following rendition of a written order"). Consequently, Petitioner's claim is due to be dismissed.

Even had Petitioner properly exhausted this claim, he is not entitled to habeas corpus relief. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). First, to the extent Petitioner now argues that the trial court violated Florida law when it failed to read a special jury instruction on causation, the claim must fail. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991); see also 28 U.S.C. § 2254(a). Accordingly, the Court may not grant habeas relief based on an alleged error in the interpretation or application of state law. Estelle, 502 U.S. at 68; Dugger v. Adams, 489 U.S. 401, 409 (1989) ("[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution.").

Next, even assuming *arguendo* that Petitioner raises a cognizable federal claim, he must show that the state trial court's failure to read the instruction so infected the entire trial that his resulting conviction for manslaughter violated due process. Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)). The Court does not judge the allegedly erroneous instruction "in artificial isolation," but considers the instruction in the context of the trial record and the jury instructions as a whole. Henderson, 431 U.S. at 152 n. 10 (citing Boyd v. United States, 271 U.S. 104, 107 (1926)). Further, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson, 431 U.S. at 154. Accordingly, where, as here, the alleged error is an omitted instruction, the burden on the petitioner is "especially heavy." Id.

The trial court instructed the jury on manslaughter as follows:

> To prove the crime of manslaughter, the State must prove the following two elements beyond a reasonable doubt: One, Cindy Lynn Warner is dead. And two, Javier Torres' acts caused the death of Cindy Lynn Warner or the death of Cindy Lynn Waner was caused by the culpable negligence of Javier Torres.
>
> . . .
>
> I will now define culpable negligence for you. Each of us has a duty to act reasonably towards others. If there is a violation of that duty, without any consideration intention of harm, that violation is negligence. But culpable

> negligence is more than a failure to use
> ordinary care toward others.  In order for
> negligence to be culpable, it must be gross
> and flagrant.  Culpable negligence is a course
> of conduct showing reckless disregard of human
> life or the safety of persons exposed to its
> dangerous effects, or such an entire want of
> care as to raise a presumption of a conscious
> indifference to consequences, or which shows
> wantonness or recklessness, or a grossly
> careless disregard for the safety and welfare
> of the public, or such an indifference to the
> rights of others as is equivalent to an
> intentional violation of such rights.
>
> The negligent act or omission must have been
> committed with an utter disregard for the
> safety of others.  Culpable negligence is
> consciously doing an act or following a course
> of conduct that the Defendant must have known,
> or reasonably should have known, was likely to
> cause death or great bodily injury.

(T. at 319-21).  Petitioner now appears to argue that an additional

instruction should have been read informing the jurors that, if

they concluded that the victim died of a drug overdose instead of

strangulation, Petitioner could not be found guilty of

manslaughter.[4]  However, this is precisely what the trial court

---

[4] Petitioner does not apprise the Court of the special
instruction on causation he believes the trial court should have
read to the jury.  In <u>Eversley</u>, the case cited by Petitioner in
the instant petition, the Florida Supreme Court explained that
there are two components to causation:

> Causation consists of two distinct sub-
> elements. As legal scholars have recognized,
> before a defendant can be convicted of a crime
> that includes an element of causation, the
> State must prove beyond a reasonable doubt
> that the defendant's conduct was (1) the
> "cause in fact" and (2) the "legal cause"

told the jury when it instructed that, in order to find Petitioner guilty of manslaughter, it must find that "Javier Torres' acts caused the death of Cindy Lynn Warner or the death of Cindy Lynn Warner was caused by the culpable negligence of Javier Torres." (T. at 319).  Had the jury determined that the victim died of a drug overdose and not from strangulation, as Counsel strenuously argued during closing (T. at 313), the jury could not have found him guilty of manslaughter.

When viewed in the context of the trial as a whole, Petitioner has not met his heavy burden of showing that the trial court's failure to read a special instruction on causation violated due process.  Claim One was neither contrary to, nor based upon an

---

> (often called "proximate cause") of the relevant harm.
>
> In order to establish that a defendant's conduct was the "cause in fact" of a particular harm, the State usually must demonstrate that "but for" the defendant's conduct, the harm would not have occurred. A defendant can rebut this showing by demonstrating that the harm would have occurred in any event, regardless of the defendant's conduct.

Id. at 966-67 (citations omitted).  Presumably, Petitioner believes that a special instruction would have led to an acquittal by allowing the jury to find that the victim would have died from a drug overdose even had she not been strangled.  In other words, Petitioner urges that the jury would not have found him to be the "cause-in-fact" of the victim's death due to the presence of drugs in the her system at the time of her death.  However, no evidence was presented at trial that drugs caused the victim's death or that she would not have died in the absence of the drugs.

unreasonable application of, <u>Henderson</u> or any other clearly established federal law. In addition to being unexhausted, Claim One is denied on the merits. 28 U.S.C. § 2254(d).

## B. Claim Two

Petitioner asserts that Counsel was ineffective for advising him that, if he testified, "every aspect of his criminal background would be revealed to the jury on cross-examination[.]" (Doc. 1 at 7). Petitioner states that, had he known the jury would not have learned the details of his prior convictions for grand theft, burglary, and drug related offenses, he would have testified that: the victim suffered from migraine headaches for which she took prescription pain medication; at some time prior to her death, the victim fell backwards and injured the back of her head and neck; the victim took an oxycodone pill that was not prescribed shortly before going to bed on January 30, 2009; and Petitioner found the victim lying dead on the bed on January 31, 2009. Petitioner asserts that this testimony would have refuted the Medical Examiner's testimony that the victim's death was caused by strangulation. <u>Id.</u> at 8.

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court denied the claim without an evidentiary hearing because he had not demonstrated <u>Strickland</u> prejudice:

> While in many cases resolution of this type of
> claim requires an evidentiary hearing, if an
> interference claim is only supported by the
> defendant's declaration of innocence, the

claim may be denied without a hearing. <u>Jackson v. State</u>, 711 So. 2d 1371, 1373 (Fla. 4th DCA 1998).   Furthermore, in this case the jury had an opportunity to review a recording of Defendant's extensive statement to the police concerning the circumstances of the victim's death and his denial that he strangled her. In addition, on cross examination of Dr. Hamilton, defense counsel was able to illicit the fact that the victim ingested drugs through the discussion of the results of the autopsy.   Therefore, Defendant cannot show how he was prejudiced by not testifying to facts that were already presented to the jury. <u>Oisorio v. State</u>, 676 So. 2d 1363, 1364 (Fla. 1996).   Moreover, it was stated on the record that Defendant was to testify, but after the State's case was presented, which included Defendant's lengthy statement, Defendant and counsel decided it was in Defendant's best interest not to testify.

(Ex. 11 at 2-3).   Florida's Second District Court of Appeal affirmed the post-conviction court's rejection of Claim Two (Ex. 12).   Petitioner does not explain how the state court's rejection of Claim Two was contrary to <u>Strickland</u> or based upon an unreasonable determination of the facts.   A review of the record supports the state courts' conclusion that Petitioner cannot demonstrate prejudice from his decision not to testify.

During his trial, the state played the tapes of Petitioner's police interviews to the jury (T. at 191-94; Ex. 14).   In those tapes, Petitioner told police that the victim had used cocaine and taken OxyContin prior to going to bed (Ex. 14 at 9, 11, 12, 13, 15, 27, 29, 56, 63, 82).   He told police that the victim suffered from migraine headaches and blurred vision. <u>Id.</u> at 12, 13, 15, 68.

The medical examiner testified that the victim had a significant amount of drugs in her system when she died (T. at 262-65). Petitioner repeatedly told the police that he had not harmed the victim (Ex. 14). Accordingly, most of the testimony Petitioner asserts he would have given at trial was cumulative to that already heard by the jury. See Rose v. McNeil, 634 F.3d 1224, 1243 (11th Cir. 2011) ("Obviously, a petitioner cannot satisfy the prejudice prong of the Strickland test with evidence that is merely cumulative of evidence already presented at trial."). To the extent Petitioner believes he could have contradicted his prior statements to the police by making different, more favorable, statements at trial, it is reasonable for counsel to believe Petitioner's self-serving testimony would have had little credibility with the jury given Petitioner's motivation to lie and the evidence against him.

The state court's determination that Petitioner cannot show prejudice from his failure to testify at trial was not so unjustified that it "was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87. Accordingly, Claim Two is denied pursuant to 28 U.S.C. § 2254(d).

### C.   Claim Three

Petitioner asserts that Counsel was ineffective for failing to request a jury instruction on lesser included offenses (Doc. 1

at 8).  He asserts that the jury should have been instructed on aggravated battery, felony battery, and/or aggravated assault as lesser included offenses to his manslaughter charge. Id. at 9. Petitioner raised this claim in his Rule 3.850 motion, and the trial court denied the claim on the ground that it lacked merit:

> This allegation is without merit. When a defendant is charged with a homicide, it is improper to instruct the jury on a non-homicide lesser included offense where the defendant disclaims all criminal culpability in the death of the victim. Humphrey v. State, 690 So. 2d 1351, 1353 (Fla. 3d DCA 1997). If the jury believed that Defendant was not culpable for the victim's death, the jury would have the duty to acquit Defendant and not find him guilty of a lesser included offense. Humphrey at 1353. Moreover, as a matter of law, even the failure to give an instruction on a lesser included offense as a possibility of a jury pardon cannot form the basis for a finding of prejudice under Strickland pursuant to rule 3.850. See State v. Young, 932 So. 2d 1278 (Fla. 2d DCA 2006); Sanders v. State, 946 So. 2d 953 (Fla. 2006).

(Ex. 3 at 3).  Florida's Second District Court of Appeal affirmed the post-conviction court's denial of this claim (Ex. 12). Petitioner does not explain how the state courts' conclusions were contrary to, or based upon an unreasonable application of, Strickland.  Nor does he assert that the conclusions were based upon an unreasonable determination of the facts.  To the contrary, a review of applicable state law supports the post-conviction court's denial of Claim Three.

The Florida Supreme Court has reasoned that in cases where "death is not an issue, no rational purpose would be served by instructing on" lesser included offenses. State v. Barrit, 531 So. 2d 338, 339 (Fla. 1988); see also Martin v. State, 342 So. 2d 501, 503 (Fla. 1977) ("[W]here a homicide has taken place, the proper jury instructions are restricted to all degrees of murder, manslaughter, and justifiable and excusable homicide."). The Martin court noted that, when "an unlawful homicide has occurred, [the jury] must then determine what degree of murder or manslaughter is involved. Whether an aggravated assault occurred as part of a crime that culminated in the death of the victim is patently immaterial." Martin, 342 So. 2d at 502-03. Given the law on this issue, reasonable counsel could have decided against asking for a lesser-included jury instructions. Therefore, Petitioner has not satisfied the first Strickland ineffectiveness prong. Moreover, it was not disputed that the victim was dead. If the jury determined that Plaintiff had not strangled her, the jury would have been required to return an acquittal, not a lesser-included conviction. As a result, Petitioner cannot show prejudice from Counsel's failure to seek the lesser-included instruction. Claim Three fails to satisfy either prong of the Strickland ineffectiveness test and is denied pursuant to 28 U.S.C. § 2254(d).

**D.   Claim Four**

Petitioner asserts that Counsel was ineffective for making only a "perfunctory" motion for judgment of acquittal (Doc. 1 at 9).  Specifically, he argues that Counsel "failed to identify what aspect of the evidence was insufficient or even state which element was lacking in proof." Id. Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court denied it based on the fact that Petitioner had not shown that "a more artfully presented motion based on the evidence presented against him at trial" would have been successful (Ex. 3 at 3) (citing Neal v. State, 854 So. 2d 666, 670 (Fla. 2d DCA 2003)).  The post-conviction court further determined that the motion for judgment of acquittal did not have a "likelihood of success." Id. at 4. Florida's Second District Court of appeal affirmed (Ex. 12). Petitioner does not explain how the state courts' conclusions were contrary to, or based upon an unreasonable application of, Strickland.  Nor does he assert that the conclusions were based upon an unreasonable determination of the facts.  A review of applicable state law supports the post-conviction court's denial of Claim Four.

Under Florida law, a motion for a judgment of acquittal is designed to test the sufficiency of the evidence against a defendant. Joiner v. State, 618 So. 2d 174, 176 (Fla. 1993).  A trial court may not grant a motion for a judgment of acquittal

"unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." Miller v. State, 782 So. 2d 426 (Fla. 2d DCA 2001) (quoting Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974)). The party moving for a judgment of acquittal admits the facts adduced in evidence and every conclusion favorable to the state which is fairly and reasonably inferable therefrom. Spinkellink v. State, 313 So. 2d 666, 670 (Fla. 1975). If the state has produced competent evidence to support every element of a crime, a judgment of acquittal is not proper. Gay v. State, 607 So. 2d 454, 457 (Fla. 1st DCA 1992).

Under Florida Statute § 782.07(1), manslaughter is the unlawful "killing of a human being by the act, procurement, or culpable negligence of another" which is not excusable homicide or murder. At Petitioner's trial, the medical examiner testified that the victim was dead and had died from strangulation (T. at 257). Testimony was presented that the victim went into her bedroom with Petitioner, and that no other adult except for Petitioner entered the bedroom on the night the victim died (T. at 158-60). Therefore, viewing the evidence in the light most favorable to the state, competent evidence was produced at trial to prove each element of a manslaughter charge. Although Counsel did make only an admittedly "boilerplate" motion for a judgment of acquittal at the close of the state's case (T. at 277), his

performance was not deficient for failing to make a more complete motion because he had no grounds on which to do so. Rasheed v. Smith, 221 F. App'x 832, 836 (11th Cir. 2007) (failure to file a motion which would be futile is not deficient performance of counsel under Strickland). Claim Four fails to satisfy the first prong of Strickland, and is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   Certificate of Appealability Pursuant to 28 U.C.S. § 2253(c)(1)[5]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282

---

[5] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether he is entitled to a certificate of appealability.

(2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. at 335-36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he may not appeal *in forma pauperis*.

Therefore, it is now **ORDERED AND ADJUDGED**:

1.   The Florida Attorney General is dismissed from this action.

2.   Claim One of Petitioner's 28 U.S.C. § 2254 petition is **DISMISSED** as unexhausted, or alternatively, **DENIED**. Each remaining claim is **DENIED**.

3.   Petitioner is **DENIED** a certificate of appealability.

4.   The **Clerk of Court** is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this _27th_ day of October, 2016.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Javier Torres
Counsel of Record

- 26 -